UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

Cheryl Fenelon
Barbara Fenelon Jackson
Plaintiffs,

v.

Lake Bethlehem Baptist Church,
Rickey Hall,
Lake Community Development,
Pittre Walker,
Dennis Everett, Sr.,
Shreveport Housing Authority,
Bonnie Moore,
Derrick Thomas,
City of Shreveport,
DOES 1-50
Defendants.

*OTC*

RECEIVED
U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

JUL 1 0 2026

BY:_____  DANIEL J. McCOY, CLERK

5:26-cv-2480

**PLAINTIFFS' EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER FOR RELOCATION ASSISTANCE, WITNESS PROTECTION, SERVICE BY U.S. MARSHAL, AND AUTHORIZATION FOR ELECTRONIC FILING**

Plaintiffs, Barbara Fenelon Jackson and Cheryl Fenelon, appearing pro se, respectfully move this Court for an Emergency Temporary Restraining Order (TRO) and Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65. Plaintiffs urgently request an Order mandating the Defendants to immediately allocate emergency relocation assistance from their active HUD/HOME allocations, directing the United States Marshals Service to execute service of process, and granting immediate protective oversight. Plaintiffs respectfully assert that the city of Shreveport should be ordered to pay cost for this filing.

## I. INDEPENDENT GROUNDS FOR EMERGENCY RELOCATION

1. **Present Life-Threatening Danger to Elderly Plaintiff:** Plaintiff Barbara Fenelon Jackson is **a septuagenarian,** displaced disaster survivor. She is living in forced exile from New Orleans after both Plaintiffs evacuated to Shreveport. Plaintiffs' housing infrastructure has been and continues to be among tools for retribution against both Plaintiffs for, *inter alia*, their repeated refusals to cooperate with, and participate in federal program frauds. Further, the Plaintiffs' tormenting predicaments are because of their reports of government program crime to Congress, federal agencies, and local law enforcement.

2. The dwelling where Plaintiff Barbara resides, and co-Plaintiff Cheryl formerly resided, **has absolutely no air conditioning** due to neighbor tampering and disabling the outside central air unit, years ago. (The Plaintiffs purchased a window air condition unit, which they no longer have.)

3. Plaintiffs also **do not have gas utilities** since recurrent strong gas smells due to tampering

made it expedient to have the meter taken away.  Moreover, as far back as year 2020, the **roof has been leaking in multiple places, and there is accelerating rotted ceilings, mold and mildew**.

4. The Lake Bethlehem Baptist Church (LBBC) defendants know about the rotted ceilings and lack of air condition, because in April 2022, Barbara showed pictures of the inside to LBBC deacon #1 as the deacon's crew worked next door on an unoccupied house.  And, as far back as 2017, a different deacon #2 and his crew have been cutting grass at the houses; they can see the central air condition has not worked years. ( And Plaintiffs had no longer have the window a/c units that Plaintiffs purchased.)  Also, window opening is problematic because of LBBC workers randomly show up for outdoor tasks. Thus, attempts at capturing outside breeze through opened windows is risky and problematic for privacy, as well as ventilation from inhaling mold, mildew.

5.  In year 2025, the Plaintiffs learned that (long before the Plaintiffs became tenants at one of the rental houses belonging to Lake Bethlehem Baptist Church (LBBC)) the City of Shreveport entered into a **20-year HUD HOME Investment Partnership** contract with LBBC that expires on January 31, 2028.  Also see that the contract states: "Lake CDC 2024 Annual Compliance Review."  See that the exhibit states: "Program Year(s) Reviewed: 2023-2024," and includes the domicile where up to this day Barbara still resides.  "Lake Community Development Corporation" is a sub-grantee.  Cheryl (daughter) also had resided with her mother for nearly two years.

6.  After learning about the LBBC / LCDC contract, Plaintiffs searched to understand how could it be possible to subsidize Plaintiffs' residence,  despite that **Plaintiffs neither applied for, nor signed any HUD assistance document(s)**.

7. [In Plaintiffs' forthcoming Amended Complaint, after they are relocated to safety, the Plaintiffs describe with specificity, that their unconstitutional predicament is due to self-dealing, unaccountable "Information & Referral", and "Continuum of Care" non-governmental organizations (NGOs). Plaintiffs also describe how nonprofit, Louisiana Services Network Data Consortium (LSNDC), along with co-conspirators, **control how and where targeted classes of people: affiliate, worship, reside, recreate, own businesses —as well as gain employment, acquire medical care, and education.**]

II. 8. **Active Intimidation & Structural Endangerment**: Ostracism, oppression, intimidation, humiliation, neighbor bullying that began around year 2009, and continues to this day entails: mortifying rumors, siccing dogs on Plaintiff Barbara, repeated tossing explosive firecrackers directly onto Plaintiffs' residential roof, shattering structural integrity, causing actively rotting ceilings and leaking roofs, and throwing objects that cracked bedroom windows. Mold infestation and lack of air condition is worsened by the fact that opening the windows is a problem due to individuals connected to LBBC randomly showing up, purportedly to do various tasks at the church's HUD-assisted four houses. Approximately two weeks ago, workers passed on three different days within reaching distance of Plaintiffs' opened windows, and were able to peer inside.

9.  Further, often Barbara has had to refrain from leaving the domicile to run errands due to neighbor stalking and bullying.  Barbara travels via public bus transportation, taxicabs, or she pays people to transport her.

10.  Additionally, there are instances where neighbors humiliate and cuss Plaintiffs, and have threatened Plaintiff Barbara with bodily harm. Garbage and feces have been placed at Plaintiffs' domicile –and **repeated threats to set their dwelling on fire** led the Plaintiffs to move the majority of their valuables away from where they reside.

11.  Further terrifying, was the neighbor who came from across the street and stood outside Plaintiffs' kitchen window with his shirt raised to show his gun.  And at a different time, the gunman's mother slapped Barbara's cell phone to the concrete and broke it.  Plus, the bully neighbors who broke Barbara's cell phone, brandished a gun, also went ahead of Barbara to the bus stop with their big dogs and waited for her to arrive.  Barbara avoided their jejune trap by fleeing to a neighbor's house.  The helpful neighbor and Barbara watched as the pair and their BIG dogs circled the entire block to see where Barbara had fled.  Furthermore, it was a series of ongoing  unlawful and terrifying things that happened –and still are happening this very day– to the Plaintiffs.  Barbara was prompted on July 28, 2017, to post on their website: "MAYDAY –Please Help Save My Life!"   As shown in exhibits attached herein, the Plaintiffs also filed that MAYDAY appeal in the Lafayette postal "mixed-motives" discrimination case.

12. Recurrent, ongoing bullying, harassment, stalking, life threatening, deliberate economic impoverishment and blacklisting; and inability to obtain process servers for the church defendants, repetitious court clerk falsified entries in the court record, caused the Plaintiffs to abandoned their prior cases. Also, economic duress, blatant frauds on the court, Hobbs Act extortion, and other judicial impediments have served to obstruct, until year 2025, the Plaintiffs' possibilities for learning that their identities were being used, and continues to be used without their consent, for purposes of criminal "project-based" rental payments –and additional government programs social services contracts and funds being unlawfully acquired, up to the  very day of this filing, by LBBC / LCDC and co-conspirators.  But the fact that it is extremely dangerous to reside without air conditioning, and with formaldehyde, rampant mildew and mold,  while Plaintiffs' stolen identities continue to be utilized, leaves the Plaintiffs with no option other than attempt legal remedies, and reparations that the Plaintiffs are entitled to receive.

**13.  NONE OF the abhorrent wrongs that the Plaintiffs suffered and continue to suffer –as well as multiple health conditions– would have happened to the Plaintiffs if it had not been for massive longstanding, fraudulently concealed, federal program racketeering to continues to this very day!**

14. Accordingly –as self-evident from Plaintiffs' year 2025 discovery of the HOME Investment Partnership contract that had been fraudulently concealed from the Plaintiffs– the Plaintiffs' causes of action are neither ***res judicata*** nor prescribed.  **And frauds on the court, economic duress, threatenings, and other obstructions prevented exposure** of confederated, self-dealing Continuum of Care NGOs and co-conspirators –along with certain Shreveport personnel and **the city's unaccountable "partners,"** that for decade have been and continue to engage in: government program frauds, Antitrust, RICO; as well as civil rights violations, identity thefts, and other wrongs that injured and damaged, and continues to injure and damage the Plaintiffs to the day of this civil action.

15.  To reiterate, **prior to year 2025, the Plaintiffs had no way of knowing about the LBBC**

**/LCDC contract** that utilizes the Plaintiffs' identities, *inter alia*, in furtherance of <u>fraudulent project-based rental assistance</u> payments to LBBC / LCDC for the Plaintiffs' domicile. Moreover, the Plaintiffs could not have earlier averred these recent discoveries in Plaintiffs' causes of action –due to the fact prior to 2025, Plaintiffs did not know such federal rental payments were occurring. Furthermore, Plaintiffs had no way of knowing or imagining how and what caused such rental payments to become set in motion.

16. And to be clear, the secretive city of Shreveport contract with LBBC specifies "Lake Community Development Corporation" as sub-grantee. But, often, LCDC is "not in good standing" with the Secretary of State. And back in May 15, 2010, the Internal Revenue revoked LCDC's tax exempt status. Those are additional matters that are not in compliance with the HUD HOME Investment Partnership program –especially in light of the often deplorable LBBC \ LCDC houses that are federally-subsidized.

17. Glaringly, this HUD HOME contract which expires on January 31, 2028 **should have been invalidated long ago** due to LBBC's / LCDC's many violations of the HOME Investment Partnership Program. Among other things, <u>if the LBBC / LCDC contract had been annulled</u> as it should have been, the Plaintiffs and other tenants would not have been subjected, for such a long time, to **rent overpayment**, indecent living conditions, and unlawful exclusion from the very federally-funded **supportive services aimed at tenant self-sufficiency**, and moving on from assisted housing.

18. An additional reality is the fact that **for nearly four years, the Plaintiffs were unsure who was the landlord**. As exhibits attached to this TRO motion show, the Plaintiffs made cash, as well as paper rental payments directly to reverend Everett and to Lake Bethlehem Baptist Church. Also, as instructed, the Plaintiffs made rent payable to Lake Life Development Center (LLDC), and to Lake Community Development Corporation (LCDC). Plus, despite telling the Plaintiffs their rent was $600 –unbeknownst to the Plaintiffs– LBBC / LCDC all the while, simultaneously, collected HUD rental assistance draws for Plaintiffs' tenancy. Moreover, the <u>Plaintiffs did not know, and they still don't know where is LCDC located</u>. (Various papers suggests LCDC's locations at Dalzell Street, Pierre Avenue, and at Martin Luther King Jr., Blvd. Plus, LCDC was never listed in phone books –unlike LLDC which was not licensed to do business.)

19. Significantly, in the first place, rent for the Plaintiffs' tenancy never should have started out at $600.00 per month (subsequently they were not asked to pay it). The most important fact about the Plaintiffs' lack of knowledge that Plaintiffs' residence was federally-assisted is that subsidized renters pay 30% of their adjusted monthly income toward rent <u>and</u> utilities. The Plaintiffs also did not know that they should have been provided HUD "supportive services," as well as MBE, DBE, WBE, and HUD Section 3 opportunities.

III. 20.  **Intentional Economic Deprivation and Imposed Poverty:** In 2009 after Plaintiff Cheryl (daughter) came to live with Plaintiff Barbara (mother), LBBC owners coerced both Plaintiffs to restart their New Orleans pre-disaster corporations at LBBC-owned facilities. No one ever told the Plaintiffs anything about Minority Business Enterprise (MBE) and Women Business Enterprise (WBE) status; Disadvantaged Business Enterprise (DBE) classifications; and HUD Section 3 economic opportunity. Plus, for no justifiable reason, the Plaintiffs were repeatedly

excluded from federal programs administered through Community Action Agencies–including LIHEAP. Contrastly, nonprofit Caddo Community Action awards thousands of federal programs' dollars to multiple nonprofit businesses owned by the LBBC /LCDC family empire.

21. Federal procurement requires WBE, MBE, DBE and HUD Section 3 compliance. Moreover, Shreveport's former economic development director, Bonnie Moore, was responsible for nearly a hundred **'notices of available funding'** that included references to Continuum of Care, WBE, DBE, MBE. Yet –aside from the city's unlawful 20-year HOME Investment Partnership contract with LBBC– for decades the city has repeatedly failed its government program obligations to targeted renters. Even further, HUD requires "supportive services" for purposes of lessening tenant dependency on government programs.

22. Even so, the Plaintiffs were not afforded any of those government provisions **aimed at self-sufficiency and basic human dignity**. Plus, among other things, Moore –along with LBBC's Pittre Walker, were (are) amalgamated with nonprofit predator, Louisiana Services Network Data Consortium (LSNDC) and its co-conspirators. Moore also engineered government programs when HUD had a local office at 501 Texas Street in Shreveport. Also, Moore is an officer and / or a board member on many other prominent NGOs and city bureaus –including the Shreveport Implementation Redevelopment Authority. In year 2024 –aided by LBBC deacon Hall who is also a SIRA board member– SIRA paid $555, 000 to the president of Lake Bethlehem Baptist Church, Dennis Everett, Sr– for the abandoned building located at 700 Pierre Avenue.

**IV. 23. The Fraudulent Inducement & Concealed Project-Based HUD Scam: September 2008 (The Inducement):** The Plaintiffs' year 2025 discovery of the HOME Investment Partnership contract exposes the precise fraudulently concealed motive behind the false church employment promise. Specifically, Plaintiff Barbara (mother), was falsely informed that Barbara was hired for church employment with Lake Bethlehem Baptist Church network –with whom she had no prior acquaintance.

24. Barbara only agreed to rent at $600 per month, after she was told about LBBC's rental houses, because she believed the rent would be paid from church salary. But, via untruthful church employment, Barbara was intentionally deceived into **occupying an oversized 3-bedroom, 2-bathroom manufactured house / unit.** But, the Plaintiffs' tenancy never should have occurred in light of HUD's bedroom occupancy ratio mandates. Plus, prior to moving into the oversized unit, no standard background check, nor income verification, nor rental references was required. Therefore, even despite rumors, the Plaintiffs did not believe that their LBBC dwelling was, and continues to be HUD-assisted. And up until year 2025, the Plaintiffs had no way of knowing about mandatory income adjusted rent as well as "utility allowance." Such tenancy adjustment are HUD-mandated obligations for "participating jurisdictions." **Also, crucially, no housing voucher was ever issued to or known by either Plaintiffs.**
25. Additionally, as far back as year 2009, as best as the Plaintiffs could do so, Plaintiffs have been paying out of pocket for various repairs at their LBBC / LCDC dwelling.

26. Moreover, Barbara not only did not receive church employment, both Plaintiffs collectively used their own resources and finances to provide ministry and social services. Plaintiffs' ministry was so effective and impressive that Barbara was given a "Kingdom Builders'" award.

27. As it pertains the City of Shreveport's HOME Investment Partnership contract with LBBC, the agreement comprises four manufactured HOME-assisted "Fixed" Units with a 20-year period of affordability. Yet, two of the houses had remained boarded up for years –until in April 2025. In April 2025, individuals removed the boarding, and contents inside the house curbside for trash pick up, and moved in. The other LBBC house, with its contents also inside, is still boarded up, and bullet holes in windows for both houses are still visible. And clearly, Barbara's initial occupancy at an oversized unit –as well as the boarded houses, violate HUD's occupancy, compliance, and disclosure regulations.

28. Additionally, after a female who had inspected Plaintiffs' domicile was among a group of inspectors who were arrested in 2009, there has been no inspection of the Plaintiffs' residence since then. Clearly, for a very long time, the city of Shreveport and the LBBC / LCDC empire has been unconstitutionally utilizing and continue to utilize the Plaintiffs' stolen identities in furtherance of deliberately exploiting, impoverishing the Plaintiffs; and in furtherance of pilfering government benefits belonging to both Plaintiffs.

29. As delineated in the Plaintiffs' Amended Complaint –to be filed after Plaintiffs as Informants who are occupants at the uninhabitable dwelling become relocated– the Defendants are among troves of coalesced non-governmental organizations (NGOs) and businesses that acquire millions of dollars in federal program contracts and grants annually. Defendants and co-conspirators scout for, and prey upon targeted individuals and families whose *backs are against the wall*; or low income; or natural disaster survivors; or have health conditions; and so on –all in furtherance of amassing government contracts tied to federal education, health, transportation, housing, and Treasury Department programs.

V 30. **October 2008 (The Structural Capture)**: After Plaintiff Barbara had already moved in to the LBBC house, the pastor's niece, Defendant Pittre Walker, came to Barbara and asked her to sign Walker's convoluted lease. Solely for purposes of gaining a document to verify Barbara's authorization to occupy the LBBC house. Unknown to either Plaintiffs, the undecipherable entity "LCDC" listed on Walker's lease is the family's alter-ego non-profit, "Lake Community Development Corporation."

31. Ostensibly, the lease was utilized for procuring federal disaster recovery contracts, grants, and social services provider funds. The Defendants used both Plaintiffs' identities without their consent or knowledge to deceitfully obtain **direct "project-based" housing assistance payments** –not only through the Stafford Act, but also through an array of other federally-funded social services programs. According to Congressional, as well as Inspector General reports, eligible displaced evacuees, such as the Plaintiffs, were entitled, under the Disaster Housing Assistance Program (DHAP), to an amount up to $26,200 –enough for 18 months of rental costs and expenses per household. DHAP was extended to October 2009. Thus, the fact that prior to moving with mother in 2009, Plaintiff Cheryl's transient residences had been elsewhere. Cheryl, too, was entitled to $26,200. The Plaintiffs also now know that even prior to 2008, the Shreveport administration, as well as troves of non-governmental organization providers for social services secretively utilized targeted disaster survivors' identities.

VI. **32. The City of Shreveport is a "participating jurisdiction."** The city purportedly

competitively bids for and receives billions of dollars in government funds. But, the city habitually conceals utility allowance, and income adjusted rent payments from low income renters, while lawlessly disbursing "housing assistance payments" **directly to landlords**. As it pertains the DHAP that ended in October 2009, participating jurisdictions that funneled government funds and contracts to landlords **without mandatory tenant documentation**; and PJs that –unbeknown to tenants such as the Plaintiffs– apportioned "project based" DHAP rental payments to landlords such as LBBC / LCDC, constitute **discrimination based on economic status.**

33. Under section 42 U.S.C. § 5151(a) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, it is compulsory that assistance and relief shall be accomplished in an equitable and impartial manner –including without discrimination based on, *inter alia*, **economic status**. From the very beginning, the City of Shreveport's illegal arrangement landlord rental payments to LBBC / LCDC pertaining the Plaintiffs' tenancy violated section 42 U.S.C.§ 5151(a).  And the city paid to LBBC \ LCDC "project-based" housing subsidy while at the same time disregarding low income tenants' rights, and by failing to conduct housing inspections.

34. Further, as far back as the DHAP era, the city unconstitutionally disregarded HUD adjusted income rent calculation and utility allowance for low income people.  And, the Defendants' failures and lack of inspections that long ago could have resulted in corrective actions for the mold, mildew, and lack of air condition at the Plaintiffs' dwelling which a serious health hazard and financial noose.

35. Moreover, for the Plaintiffs, it is still a mystery how HUD "project-based" rental assistance payments can be paid to LBBC despite that the Plaintiffs have never had **requisite interaction** with a supposedly Shreveport housing authority –for any purpose of seeking rental help. As mentioned, Plaintiffs **never received / they never requested any HUD rental assistance voucher** from any supposedly housing authority.

36. The Plaintiffs are outraged! Had the Plaintiffs known about any kind of rental help being paid on their behalf, Plaintiffs would have chosen for themselves a city and a neighborhood where Plaintiffs preferred to reside –as well as a location advantageous to Plaintiffs ability to resuming pre-disaster corporations the Plaintiffs had established in New Orleans.

37. For sure, Plaintiffs would not have selected a city with rampant nonprofit marauding. Shreveport, Louisiana is such a city that is saturated with federally-funded, often-unidentifiable, unaccountable **PROFITEERING:** privately inured family-owned churches; news media personalities that benefit from promoting NGOs; mutual aid groups; non-vetted 'outreach' workers; city-paid "ambassadors "; and administrative "non-disclosure" agreements.

38. Plus, **NGO secrecy** facilitates citizens being preyed upon. For instance, the Plaintiffs' unwary mistake of contacting the "Information & Referral" system in search of business and employment opportunities, spawned injuries and damages –including Plaintiffs' entrapment into a ruthless NGO dungeon comprised of products, goods, and services cartelists. Further, unrecognizable NGOs are harmful when scores of NGOs are owned / controlled by DOJ attorneys, court clerks, and sitting judges who prosecute criminal cases or preside over people's civil cases –such what happened to the Plaintiffs. SEE a sample list of Louisiana judicial /

political NGOs attached as exhibit to this TRO motion.

39. Further, Shreveport administration embraces illicit and licit NGOs –whether or not they are licensed or authorized to do business. Also, innumerable mutual aid groups are seldom identifiable or vetted. Plus, secretive "pass-through" groups and entities –including various news media employees– insinuate themselves in community services; and some media personnel are undisclosed board members for Continuum of Care NGOs that have massive salaries and administrative expenses from millions of dollars in annual federal funding and contract. Such Shreveport 'wheeling and dealing,' the Plaintiffs believe, played roles in the murder of Plaintiffs' mother / grandmother.

**40. Therefore, the City of Shreveport should be ordered to immediately issue to Plaintiffs emergency relocation funds.** Also, the City of Shreveport should immediately provide the Plaintiffs with financial resources to pay for: legal help, counseling, household furnishing, transportation, costs for moving charges, gas, mileage, transportation, storage, lodging, utility connection fees, a personal vehicle, and costs for renting a place to reside away from active Continuum of Care social service providers at a location outside the Defendants' and co-conspirators' sphere of influence.

41. Further –at the very minimum– since the city's longstanding fraudulently concealed rent payments to LBBC / LCDC going back to as far as disaster housing assistance payments (DHAP); and in light of HUD relocation policies for uninhabitable rental units, the city of Shreveport should be made to pay emergency relocation costs and expenses in amounts similar to DHAP benefits pilfered from the Plaintiffs through use of Plaintiffs' identities.

**VII.** 42. REQUISITE STANDARD FOR A TEMPORARY RESTRAINING ORDER
 **Irreparable Injury:** Searing, summer heat without functional utilities, combined with mold, mildew, rotting ceilings, and a leaking roof establish a certain, immediate, and life threatening injury.

43. **"Irreparable Harm":** The Defendants deliberately maintain Plaintiffs' life-threatening heat, in furtherance of defrauding government social and housing programs. The Plaintiffs are in constant danger, and Plaintiffs are subjected to incessant revenge since the Plaintiffs' pursuit for emancipation from involuntary servitude necessitates calling attention entities that are responsible for Plaintiffs' unconstitutional predicaments and their shuttered corporations. The Plaintiffs' research –after learning about the HOME program contract– enabled the Plaintiffs to recognize fraudulently concealed facts as well as parties responsible for the Plaintiffs' ongoing damages, injuries, and thefts of Plaintiffs' identities.

44. **Balance of Equities:** Forcing the City of Shreveport to implement standard emergency housing relocation funds via the city's active Continuum of Care (CoC) grants, carries zero administrative weight compared to preserving the Plaintiffs' lives. Moreover, because the city receives federal housing funds for properties under the HOME Investment Partnership program, the city is **legally bound** to furnish safe shelter. It is to Plaintiffs good fortune that in year 2025 they found out about the city's long-ago hidden payments to LBBC / LCDC that used and continues to use the Plaintiffs' identities.

45. The city's unlawful contract with LBBC / LCDC specifies "**Annual Compliance Review**," and "Program Year(s) Reviewed: 2023-2024." That reality proves there was no possible way for the Plaintiffs to have known the pivotal secret fact about the Plaintiffs being **intentionally cheated out of many HUD-assisted housing provisions –including utility allowance and supportive services.**

46. From the very beginning, unbeknownst to the Plaintiffs, the year 2008 the pretense of hiring Barbara –and the 2009 deceitful prodding of both Plaintiffs to restart both of their pre-disaster businesses at LBBC facilities, were dastardly schemes for luring Plaintiffs to LBBC / LCDC properties for purposes of fraudulently using Plaintiffs in an array of government program crime and church private inurements.

47. If it had not been for Plaintiffs' discovery of the "**Annual Compliance Review**," Plaintiffs would only have been left with their suspicions regarding social services and government programs. Also, Barbara was unjustly obstructed from any Rule 56 discovery whatsoever, in her opposition to a summary judgment motion filed by lawyers who purported to be legal representatives of Shreveport housing authority, but as facts demonstrate, those lawyers represented the city. Rule 56 discovery could have long ago led to exposing fraudulent use of the Plaintiffs' identities, as well as exposure of Continuum of Care frauds in furtherance of government program schemes.

48. And even as it pertains Plaintiffs' case number 5:23-cv-01717– that **Plaintiffs were forced to abandon that case due to recurrent threats, intimidation, economic duress, and potential homelessness**.

49. **The Public Interest:** The public's interest is profoundly served by utilizing federal funds to rescue citizens from an unconstitutional, fraudulent housing capture scheme operated by social services provider cartelists.

50. Also, the public's interest is profoundly served by exposing NGOs that participate in billions of dollars in government program fraud, theft, waste, and that prey upon unwary consumers.

**VIII.** 51. MANDATORY REQUEST FOR U.S. MARSHAL SERVICE & WITNESS COMPLIANCE
52. Standard local service of process is entirely compromised and insecure because Shreveport municipal networks, city-appointed housing authority commissioners, judicial officials, law enforcement, and defendant church entities are all commingled owners and / or board members of nonprofit businesses, and are attached to CoC funding and policies.

53. **Pursuant to Federal Rule of Civil Procedure 4(c)(3) and 28 U.S.C. § 1915(d), Plaintiffs** respectfully demand that this Court order the United States Marshals Service to execute immediate service of this Emergency TRO, this Motion, and the underlying Independent Action Amended Complaint upon all Defendants; and to provide emergency witness protective oversight to ensure Plaintiffs' physical transit to a neutral, climate-controlled location.

IX. 54.  **MANDATE FOR UNIFIED, SAFE CASH RELOCATION TO REUNITE PLAINTIFFS**

55. **Rejection of Subsidized Cartel Property Assignment:** Plaintiffs explicitly move this Court to bar the Defendants from relocating them to any municipal, state-funded, or Continuum of Care (CoC) affiliated housing unit. In particular, the LSNDC continuum network includes WellSky, and Bowman Systems' ServicePoint software that universally compiles, links, and disseminates the personally identifiable information (PII) of recipients of health, housing, and education social services –and the PIIs of recipients' entire household members. Further the 211 "Information &Referral" system that predominantly is managed by United Way and its undisclosed partners, is confederated with HUD's Continuum of Care. Any placement within a local municipal project guarantees immediate continued tracking, renewed neighbor bullying, and retaliation against Plaintiffs as **whistle blowing / informants** regarding government program crime.

56. **Immediate Threat of Dual Displacement and Homelessness**: Plaintiff Cheryl (daughter), currently located three hours away, is under the same severe duress as mother. And she is facing displacement since property owners desire to renovate and move back into their own property. Moreover, Cheryl is likewise an unprotected informant. Both Plaintiffs have been and continue to be systematically targeted with imposed poverty and physical endangerment.

57. **The Relief Requested:** The Plaintiffs respectfully require that the Court order the City of Shreveport to immediately issue direct liquid funds or a cash-equivalent wire to the Plaintiffs to cover all up-front unified physical moving expenses, storage costs, legal help, procure private transportation, household furnishing, and housing rents and deposits to an undisclosed location outside the Defendants' sphere of influence. Also, resultant from Defendants' unlawful acts, the Plaintiffs have urgent need for health-related supplies and dental attention. Liquid relief is necessary to remove the Plaintiffs from active physical danger, preserve Plaintiffs' lives, permanently reunite the Plaintiffs, and ensure they can safely utilize the Court's Electronic Case Filing **(ECF) system** to file their Amended Complaint consisting of the remaining segments of this Antitrust and racketeering lawsuit without giving the Continuum of Care affiliates information or access to their new location.

58. Moreover, the Plaintiffs respectfully assert that, in light of the City of Shreveport's repeated unconstitutional conduct that served to trap Plaintiffs in economic destitution and an uninhabitable dwelling place –**the city should be commanded to pay the filing for this civil action –and pay for all associated legal costs.**

59. **Demand for Restitution of Stolen DHAP Funds with Interest:** Plaintiffs present easily verifiable claims that $26,200 in Disaster Housing Assistance Program (DHAP) funding earmarked for Plaintiff Barbara, and $26,200 earmarked for Plaintiff Cheryl, was fraudulently converted and stolen by the Defendants' network.

WHEREFORE, Plaintiffs respectfully pray that this Court grant this Emergency Motion, issue an immediate Temporary Restraining Order commanding the City of Shreveport to pay liquid cash, moving and relocation costs for an undisclosed location, order the U.S. Marshals to provide service of process, and authorize electronic filing passwords to protect Plaintiffs as unprotected informants.

Dated: July 10, 2026

Respectfully submitted,

Barbara Fenelon Jackson
P.O. Box 5373
Shreveport, LA 71135

Cheryl L Fenelon
Post Office Box 572
Ville Platte, LA 70586
*Pro Se* Plaintiff

Cheryl Fenelon